FILED

2003 OCT 20  A 10: 35

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| AUDRIN DESARDOUIN, | : |
| Plaintiff, | : CIVIL ACTION NO.<br>: 302CV2086 (JCH) |
| v. | : |
| UNITED PARCEL SERVICE, INC., | : |
| Defendant. | : OCTOBER 17, 2003 |

## AMENDED COMPLAINT

**FIRST COUNT:**

1. At all times mentioned herein, the Complainant, Audrin Desardouin, was and is a resident of the Town of Griswold, County of New London and State of Connecticut and operated a men's clothing store known as A-D Fine Men's Store located at 243 Main St, Norwich, CT. Complainant is a black male of Haitian descent.

2. At all times mentioned herein, the defendant, United Parcel Service, Inc., was and is a corporation authorized to transact business in the State of Connecticut and maintained a receiving and delivery facility located in Fitchville, CT.

3. On or about February 2001, the Complainant placed an order for the delivery of men's suits with Giorgio Cosani Imports of California at a cost of $10,918.70. The Complainant's arrangement with Giorgio Cosani Imports (GCI) was money order COD delivery for 50% of the cost and business check for the other 50% COD, post dated for at least five weeks.

4. At all times mentioned herein, the defendant, United Parcel Service, Inc. (UPS),

made deliveries from GCI to the Complainant's shop.

5. On July 20, 2001, at approximately 10:00 a.m., Mr. Robert Allen, a driver for UPS came to Complainant's store and told him that 10 boxes were at the UPS facility, but that his supervisor, David Pellerin, instructed him not to deliver the merchandise because Complainant did not have enough money to pay for the merchandise. The remark was made in the presence of other people in Complainant's shop, including customers. Complainant told the driver to call his supervisor as Complainant wanted to speak with him about this. Complainant questioned Mr. Pellerin about why his delivery was being held up and asked him if he knew information about his bank accounts. Mr. Pellerin said he was sorry and "ok, ok, what do you want me to say" and he hung up the phone.

6. At said date and time, the driver, Robert Allen, then called Mr. Pellerin from Complainant's shop and asked if the delivery could be made. Authorization was given and delivery arrived at 2:00 p.m. At that time Mr. Allen repeated the remark made by Mr. Pellerin, the people in Complainant's shop expressed concern over the situation. One of them asked Complainant if he was being treated this way because he was a black, small business owner. Another asked why Complainant was spoken to in such a manner.

7. The packages had UPS labels on them with payment instructions regarding COD cashiers check only in certain amounts and others bore instruction of COD and amount. This was consistent with Complainant's arrangement with GCI.

8. Complainant gave the driver money order for $5209.00 and business checks (2) totaling $5709.35. The business checks were post dated to August 30, 2001 and September

2001. This was consistent with Complainant's arrangement with GCI and the payment instructions on the UPS shipping labels.

9. Only July 30, 2001, Complainant learned that one of the post-dated business checks made out to GCI did not clear his account. Complainant learned that UPS had attempted to cash the checks made out to GCI on Complainant's business account. These checks, however, were postdated and there was not enough money in the account to cover the full amounts that the checks were written for, although there was enough for one of them to clear. Complainant did not expect the checks to be cashed at the time they were cashed given the post-dated status of the checks.

10. Only July 23, 2001, after the delivery was made, the same driver, Robert Allen, told Complainant that Mr. Pellerin told him that he did not properly collect the checks and that all should have been money orders. Robert Allen told Complainant that he then told Mr. Pellerin about the payment instructions on the UPS labels on the boxes, which indicated otherwise.

11. As to one of the post-dated business checks, it did not clear Complainant's account. It is Complainant's understanding that UPS continues to attempt to deposit the post dated check and Complainant continues to incur processing charges. Nobody from UPS has called Complainant or contacted Complainant concerning these checks.

12. Complainant has contacted GCI about this situation. GCI indicated that UPS did not have authority to cash a check made out to GCI. They were upset about this situation.

13. On August 28, 2001, Complainant made arrangements for Giorgio Borani, Maxman, Inc., of Los Angeles, CA, to make a delivery of men's suits to his retail clothing shop in

Norwich, CT.

14.     On August 31, 2001, payment arrangements were finalized with Maxman, Inc. The arrangement was that a cash on delivery payment of 25% of the total amount was to be made and the balance would be paid within 30 days, but a post dated check would be presented at delivery.

15.     The total shipment cost was $9860.00. The shipping payment instruction was to be that cash on delivery cashier check or money order for $2660.00, was to be required. No money order or cashier check was required for the balance.

16.     On September 12, 2001, a United Parcel Service driver came to Complainant's business and told Complainant he had a number of boxes on his truck for him. Complainant informed the driver that he had run out of business checks. He told Complainant to just get money orders. Complainant told him he could not, due to his payment arrangement with the shipper. The driver refused. Complainant told him to wait and Complainant would get blank checks from the bank. Complainant went to the bank and they said they could not as his check order had already been mailed out to him. The checks were sent UPS. Complainant asked the driver if he had any checks. He said no. Complainant asked him to come back, and he said he could not.

17.     Later that day, the same driver returned to Complainant's shop with the checks. Complainant asked him to now give him the merchandise. He said it was too late. Complainant told him to speak to the shipper Maxman, Inc., regarding the shipping instructions. The driver refused to speak to the shipper. Complainant also told him to read the shipping labels, but he

refused. The driver left.

18.     Complainant contacted the shipper. It is Complainant's undertanding that the shipper contacted the local UPS office and instructed them to make delivery in accordance with the shipping instruction. It is Complainant's further understanding that the shipper forwarded, via fax, a written directive to make delivery.

19.     On September 14, 2001, in the vicinity of Complainant's shop in downtown Norwich, Complainant met another UPS driver, Robert Allen. Mr. Allen told Complainant that he had his delivery along with specified payment instructions. Mr. Allen said that he was instructed by Mr. Sheehan of UPS not to make the delivery without collecting all money orders for each delivery piece.

20.     It is at this time that Complainant contacted Maxman, Inc., regarding this issue again. Maxam, Inc., advised that they were sending a faxed letter instructing that delivery be made per their agreement. It also came to Complainant's attention that Mr. Sheehan of UPS informed the representative from Maxman, Inc., that Complainant owed UPS $5400.00. This was not true. Complainant also tried to speak to Mr. Sheehan of UPS, but he refused to speak to Complainant regarding this matter.

21.     Later that day, after again hearing from Maxman, Inc., UPS made the delivery to Complainant in accordance with the payment instruction.

22.     On September 14, 2001, Complainant did talk to Mr. Dave Pellerin of UPS, another manager, regarding this situation. He said he told the driver to make the delivery to Complainant. This statement, however, was contradicted by the directions made by Mr.

Sheehan of UPS, the manager in charge. Mr. Pellerin also denied cashing the check that I had written out to entities other than UPS. This was also false, as plaintiff had been contacted by UPS regarding post dated checks that did not clear that they had improperly attempted to cash.

23.     This incident again unfolded in a public setting and was oberved by customers and put Complainant's business in a false light. Moreover, on September 21, 2001, Mr. Robert Allen came to Complainant's shop and asked for payment on the Giorgio Cosani shipment as detailed in the August 20, 2001 affidavit. Complainant explained to Mr. Allen that he had sent payment to Giorgio Cosani. Mr. Allen stated that he had checked with his supervisor and said his supervisor did not believe Complainant. Further, Mr. Allen stated that his supervisor said Complainant owed UPS $3200.00. Complainant provided documentation to Mr. Allen that proved this was false.

24.     On October 29, 2001, the claimant was advised that he was referred to in a racially derogatory fashion by a representative of the respondent. When providing Robert Allen, a UPS driver, with merchandise for the complainant, a representative stated: "This is for your <u>boy</u>, Audrin."

25.     On November 15, 2001, the same driver, Robert Allen, stated to complainant, in his store and in front of a customer, that "UPS does not like you". It was further stated that the driver was to withhold complainant's merchandise and see if complainant had any money.

26.     The aforementioned conduct constitutes discriminatory conduct based on race and national origin and ethnicity in violation of C.G.S. section 46a-64.

27.     As a result of defendant's discriminatory conduct, Complainant has experienced mental,

emotional, psychological and psychiatric stress.

28.  As a further result of defendant's discriminatory conduct, Complainant has suffered humiliation, embarrassment and personal degradation.

29.  Plaintiff has exhausted his adminstrative remedies with the Connecticut Commission on Human Rights and Opportunities and has received a Release of Jurisdiction/Right to Sue letter dated August 14, 2002. A copy of this notice is attached as Exhibit A.

**SECOND COUNT:**

1.  Paragraphs one through twenty-nine (1-29) of the First Count are incorporated herein and made paragraphs one through twenty-nine (1-29) of this the Second Count.

30.  The aforementioned business dealings between the parties created a course of conduct and dealings that established a contract between the parties.

31.  The defendant's discriminatory conduct as to plaintiff, based on his race and ethnicity, constitutes a violation of 42 U.S.C. section 1981 with respect to the contractual relationship between the parties, 42 U.S.C. section 1982, as to plaintiff's right to purchase, lease, sell, hold and convey personal property free from racial discrimination and Title II of the Civil Rights Act of 1964; as amended 42 U.S.C. 2000a, 2000a-1 and Title VII of the Civil Rights Act of 1964, as amended.

**THIRD COUNT:**

1.  Paragraphs one through twenty-nine (1-29) of the First Count are incorporated herein and made paragraphs one through twenty-nine (1-29) of this the Third Count.

29.   The defendant should have realized its conduct involved an unreasonable risk of causing emotional distress unto Complainant.

30.   The defendant should have realized from the facts known that the aforementioned distress if caused might result in illness or bodily harm.

31.   As a result of the aforementioned conduct of the defendant, the Complainant has suffered severe emotional distress in the form of emotional and psychological pain and suffering, humiliation and loss of self esteem and will suffer same in the future.

**FOURTH COUNT:**

1.   Paragraphs one through twenty-nine (1-29) of the First Count are incorporated herein and made paragraphs one through twenty-nine (1-29) of this the Fourth Count.

29.   The foregoing conduct by the defendant was intentional, extreme and outrageous.

30.   The defendant, its agents, servants or employees should have known or knew that emotional distress was likely to result from its conduct.

31.   As a result of the aforementioned conduct of the defendant, the Complainant has suffered severe emotional distress in the form of emotional and psychological pain and suffering, humiliation and loss of self esteem and will suffer same in the future.

**WHEREFORE**, the Complainant claims:

1. Just, fair and reasonable damages;

2. Allowable costs;

3. Attorney's fees;

4. Punitive damages;

5. Such other further relief as the court deems appropriate.

RESPECTFULLY SUBMITTED
THE PLAINTIFF, AUDRIN DESARDOUIN

BY _____
Lorenzo J. Cicchiello
His Attorney
Fed. Juris # 09277
Cicchiello & Cicchiello
582 West Main Street
Norwich, CT 06360
860.886.9300

**CERTIFICATION**

I hereby certify that a copy of the foregoing was mailed to the following counsel and pro se parties of record on October 17, 2003

Julie K. Glynn, Esq.
Morrison & Foerster, LLP
1290 Avenue of the Americans
New York, NY 10104

Barry Waters, Esq.
Murtha Cullina LLP
Whitney Grove Square
2 Whitney Avenue
P.O. Box 704
New Haven, CT 06503-0704

_____
Lorenzo J. Cicchiello, Esq.

COMMISSION ON HUMAN RIGHTS AND OPPORTUNITIES

FORM 500(3)

RELEASE OF JURISDICTION

COMMISSION ON HUMAN RIGHTS AND
OPPORTUNITIES, ex rel.

Audrin Desardouin
Complainant

Date: August 14, 2002

vs.

United Parcel Service
Respondent

CCHRO CASE NO.: 0240070
EEOC CASE NO.: N/A

RELEASE OF JURISDICTION

Pursuant to Complainant's and/or Complainant's attorney(s) request dated **August 1, 2002**, the Commission on Human Rights and Opportunities hereby releases its jurisdiction over the above numbered and captioned complaint in accordance with Section 46a-101 of the Connecticut General Statutes. Also, in accordance with Section 46a-100, C.G.S. Complainant is hereby authorized to commence a civil action against the Respondent in the Superior Court for the judicial district in which the discriminatory practice is alleged to have occurred or in which the Respondent transacts business. If this action involves a state agency or official, it may be brought in the Superior Court for the Hartford-New Britain judicial district.

**Please be advised that, pursuant to CONN. GEN. STAT. §46a-103, the Complainant or Complainant's attorney must serve on the Commission, at the same time all other parties are served, a copy of any civil action filed pursuant to this release. The Commission must be so served because it has a right to intervene in any action filed based on a release of jurisdiction.**

In granting this release, the Commission expressly finds, in accordance with Sections 46a-100 and 46a-101(b) of the C.G.S., that all conditions precedent to the issuance of the release of jurisdiction have been complied with inasmuch as the complaint was timely filed in accordance with 46a-82 of the C.G.S. and the complaint has been pending for a period of not less than 210 days, inasmuch as it was filed on **August 20, 2001** and is still pending on **August 14, 2002**, a period in excess of two hundred and ten (210) days.

Rev. 2/6/02

EXHIBIT A

Moreover, there is no reason to believe that the complaint will be resolved within a period of thirty (30) days from **August 1, 2002**, the date the Commission received Complainant's request for the Release of Jurisdiction, nor is the complaint currently scheduled for public hearing. [see Section 46a-101(c) of the Connecticut General Statutes].

<u>The complainant must bring an action in Superior Court within ninety (90) days of receipt of this release and within two (2) years of the date of filing the complaint with the Commission.</u> The Superior Court shall have such authority as is conferred upon it by Section 46a-104 of the C.G.S., and other laws of the State of Connecticut.

Concurrently, with the issuance of this Release of Jurisdiction, the Commission hereby administratively dismisses this complaint in accordance with Section 46a-101(d) of the Connecticut General Statutes. Furthermore, said dismissal is not subject to administrative judicial review.

Cynthia Watts Elder
Executive Director

By: _____
Donald E. Newton
Chief of Field Operations

Dated and entered of record in the Commission's Administrative Office in Hartford, Connecticut on this <u>14th</u> day of <u>August</u>, <u>2002</u>.

cc: Complainant: Audrin Desardouin
    Complainant's Attorney:  Attorney Lorenzo J. Cicchiello
    Receipt for Certified Mail 7099 3400 0008 5581 7822
    Respondent(s): United Parcel Service, Bozrah, CT
                Don Jones, Human Resources Manager, United Parcel Service
                Hartford, CT
    Respondent's Attorney: Attorney Barry J. Waters
    Regional Manager: James Flynn, Regional Manager,
    Eastern Regional Office

Rev. 2/6/02